UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
UNITED STATES OF AMERICA,

    -against-

LEONARD ELY,

              Defendant.
------------------------------------------------------------

MEMORANDUM & ORDER
16-CR-183 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Leonard Ely brings this motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2) and U.S.S.G § 1B1.10. (Mot. for Reduction ("Mot.") (Dkt. 68).) The Government opposes the motion. (Gov't Opp. (Dkt. 69).) For the reasons set forth below, Mr. Ely's motion is GRANTED.

I. BACKGROUND

On April 12, 2016, Mr. Ely was charged with six counts for his role in a series of armed robberies. (*See* Indictment (Dkt. 1); Factual Proffer (Dkt. 13).) On September 7, 2016, Mr. Ely pleaded guilty to three of these six counts. (*See* Min. Entry dated 9/7/2016.) Those counts were: Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a) (Count I), Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count II), and Use of a Firearm During One or More Crimes of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) & (ii) (Count IV). (*See* Judgment (Dkt. 33).) In preparation for his sentence, the Probation Department calculated Mr. Ely's offense level at 21. (Pre-Sentence Investigation Report ("PSR") (Dkt. 14) ¶¶ 17-51.) Three criminal history points were added based on his prior convictions, and an additional two "status points" for committing the underlying offense while on probation, for a total of five points, placing him in criminal history category III. (*Id.* ¶¶ 55, 59-60.) With an adjusted total offense level of 21 and a criminal history category of III, the

1

United States Sentencing Guidelines (the "Guidelines") recommended Mr. Ely a sentencing range of 46 to 57 months' imprisonment on Counts I and II, with a mandatory consecutive 84-month term of imprisonment on Count IV, resulting in a total Guidelines range of 130 to 141 months' imprisonment. (*Id.* ¶ 95.)

On September 19, 2017, Mr. Ely was sentenced by then-presiding Judge Roslynn R. Mauskopf to the bottom end of the Guidelines range, for a total of 130 months of imprisonment followed by a term of five years of supervised release. (*See* Judgment.)

## II. PROCEDURAL HISTORY

After serving approximately 54 months of his 130-month sentence, Mr. Ely filed a *pro se* motion for compassionate release on June 22, 2020, focusing on his health and prison conditions at FCI Danbury during the COVID-19 pandemic. (First Mot. for Reduction (Dkt. 40).) Following reappointment of counsel, Mr. Ely's counsel supplemented his motion. (Supp. to First Mot. for Reduction (Dkt. 45).) Judge Mauskopf denied that motion because Mr. Ely could not demonstrate that the prison conditions nor his own health conditions created extraordinary and compelling reasons warranting his release. (M&O Denying First Mot. for Reduction (Dkt. 47) at 5-6.)

Mr. Ely, through counsel, filed the instant motion for reduction in sentence over four years later. (*See* Mot.) Pursuant to 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 821 to the Guidelines, Mr. Ely moves for a five-month reduction in his sentence. (*Id.* at 1.) The Government agrees that Mr. Ely is eligible for a sentence reduction but after consideration of the factors set forth in 18 U.S.C. § 3553(a), argues that no reduction is warranted. (Gov't Opp. at 1.)

### III. LEGAL STANDARD

"'A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.'" *United States v. Alvarez*, No. 89-CR-0229 (JS), 2020 WL 4904586, at *1 (E.D.N.Y. Aug. 20, 2020) (quoting *United States v. Rabuffo*, No. 16-CR-0148 (ADS), 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020)).[1] Relevant here, 18 U.S.C. § 3582(c)(2) allows a federal court to reduce a defendant's sentence if the defendant was originally sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission when that modification is made retroactive. *United States v. Martin*, 974 F.3d 124, 136, 139 (2d Cir. 2020).

Thus, when presented with a motion to reduce a sentence pursuant to § 3582(c)(2), courts must undertake a two-step process to determine whether a final sentence should be modified. "[T]he district court must first determine the amended guideline range that would have been applicable to the defendant if the amendment had been in effect at the time the defendant was sentenced." *United States v. Baez*, No. 19-CR-463 (DLC), 2024 WL 1250583, at *1 (S.D.N.Y. Mar. 22, 2024). If the defendant is eligible for a sentence reduction, then the court must consider the factors set forth in § 3553(a) to determine whether it will exercise its discretion to reduce that defendant's sentence. *Id.* Included in this framework is the requirement that courts also consider whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, which are contained in U.S.S.G. § 1B1.10." *United States v. Torres*, No. 06-CR-987 (DC), 2024 WL 621554, at *1 (S.D.N.Y. Feb. 14, 2024). The Sentencing Commission policy statement applicable here provides that a court "shall not reduce the defendant's term

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range[.]" U.S.S.G. § 1B1.10(b)(2)(A).

Finally, the § 3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the applicable sentencing guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

## IV. DISCUSSION

At the time that the Defendant was sentenced, U.S.S.G. § 4A1.1 provided for the addition of two criminal history "status" points if the defendant committed the offense of conviction while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. U.S.S.G. § 4A1.1(d) (2016).[2] Part A of Amendment 821, effective November 1, 2023, amended this provision to, *inter alia*, eliminate the addition of such status points for a defendant who has six criminal history points or less. U.S.S.G. § 4A1.1(e) (2023).

---

[2] The 2016 Guidelines were in effect from November 1, 2016 through October 31, 2018. *See 2016 Guidelines Manual*, United States Sentencing Commission, https://www.ussc.gov/guidelines/guidelines-archive/2016-guidelines-manual (last accessed March 26, 2024).

4

The Sentencing Commission also made this provision of Amendment 821 retroactive, authorizing eligible defendants to seek a discretionary sentence reduction under § 3582(c)(2). U.S.S.G. Amend. 825; *see* U.S.S.G. § 1B1.10(d).

The parties agree that Mr. Ely is eligible for relief under Amendment 821. (Mot. at 1; Gov't Opp. at 1; *see also* Supplement to PSR (Dkt. 66) at 2-3 (noting defendant is eligible for a sentence reduction).) At the time of sentencing, Mr. Ely was assigned a total of five criminal history points, including two "status points" under § 4A1.1(d) (2016), which corresponded to a criminal history category of III and resulted in a Guidelines range of 46 to 57 months for Counts I and II. (PSR ¶¶ 59-60, 95.) Mr. Ely faced a mandatory consecutive 84-month term on Count IV, for a total Guidelines range (at the time of sentencing) of 130 to 141 months' imprisonment. (*Id.*) With the revision to § 4A1.1 under Amendment 821, those two "status points" would be eliminated thereby reducing Mr. Ely's criminal history points from five to three, and his criminal history category from III to II. When combined with a total offense level of 21, the amended Guidelines range is now 41-51 months for Counts I and II for a total amended range of 125 to 135 months' imprisonment. (Mot. at 3; Gov't Opp. at 5-6; Supplement to PSR at 2-3.)

Having determined the amended Guidelines range that would have been applicable to the Defendant had the relevant amendment been in effect at the time of the initial sentencing, the court now turns to step two of the inquiry and considers the § 3553(a) factors to determine whether the reduction authorized by Amendment 821 is warranted in whole or in part.

It is inarguable that the crimes for which Mr. Ely pleaded guilty are very serious. Indeed, Judge Mauskopf noted as much during Mr. Ely's sentencing. (*See* Sept. 19, 2017 Sent. Tr. at 23:25-24:23.) Judge Mauskopf found that Mr. Ely was a "main player" who participated in a series of robberies. (*Id.* at 25:23-26:9.) As

detailed in the Pre-Sentence Investigation Report, the Defendant was involved in four robberies between October 3, 2015 and December 6, 2015. (PSR ¶ 7.) Each robbery occurred late at night and involved Mr. Ely "going into the store, brandishing a Masterpiece Arms MPA 10T semiautomatic pistol ("Mac-10"), and demanding money from the employees." (*Id.*) In three of the four robberies, the Defendant racked[3] the firearm in order to scare the store clerks. (*Id.*) Moreover, Mr. Ely's criminal record is extensive and in line with the instant conduct as to render him a career robber. Mr. Ely's criminal history dates back to Mr. Ely's youth, with both juvenile adjudications and criminal convictions for grand larceny and robbery before the age 18. (*Id.* ¶¶ 52-54.) While these convictions were not considered when calculating his criminal history, they were considered under § 3553(a) when determining his initial sentence. (*See* Sept. 19, 2017 Sent. Tr. at 27:6-16.) The court also considered, among other things, the fact that Mr. Ely was on parole when he was arrested for the instant offense. (*Id.* at 27:17-19.) This particular finding is the gravamen of Mr. Ely's present motion.

The Government argues in its Opposition that "nothing has changed" to warrant a reduction in Mr. Ely's sentence and asks this court to give independent weight to Mr. Ely's commission of the offense while on parole despite the Guidelines no longer giving weight to the same. (Gov't Opp. at 6.) The court disagrees.

In particular, the Sentencing Commission made this "targeted" change to the Guidelines because "after several research studies,

---

[3] The court notes that the PSR describes Mr. Ely racking or discharging the firearm in three of the four robberies. (*Id.*) However, during the first sentencing hearing, it was revealed that the "discharge" that took place in the October 3, 2015 robbery by Mr. Ely's accomplice was not an intentional firing but rather an accidental misfiring. (*See* Sept. 8, 2017 Sent. Tr. (Dkt. 36) at 32:21-33:9.) While not scored as a discharge in the PSR, Judge Mauskopf still found the unintentional firing to be an "important fact" that was not detailed in the PSR. (*Id.*)

6

the data persuasively showed that although criminal history is strongly associated with likelihood of future recidivism, status points add little to the overall predictive value associated with the criminal history score." *United States v. Burton*, No. 17-CR-480 (KMK), 2023 WL 9424903, at *1 (S.D.N.Y. Jan. 26, 2023); *see also* U.S.S.G. App. C., Amend. 821, Reason for Amendment. Thus, where a particular fact was given considerable weight at sentencing, the same cannot be true today. To be clear, the court does not hold that Mr. Ely's parole status should be ignored, but rather should be appropriately re-balanced under the § 3553(a) factors in light of Amendment 821.

Thus, the court reiterates that Mr. Ely's criminal history was extensive, including prior convictions for similar conduct as well as a litany of violations while incarcerated for other offenses. (PSR ¶ 55.) However, per the application note for U.S.S.G. § 1B1.10(a)(1), this court may consider "post-sentencing conduct" when determining if a reduction is warranted. U.S.S.G. § 1B1.10(a)(1), App. Note 1(B)(iii).[4] Defense counsel submits that Mr. Ely has had only one incident in the last seven years that concerned refusing to obey an order. (Mot. at 3.) Where here, Mr. Ely has had not a single disciplinary sanction in over two years, this is certainly a showing of improvement by Mr. Ely and weighs in favor of reduction.[5] Courts have similarly found that

---

[4] Consideration of Mr. Ely's post-sentencing conduct while incarcerated for the instant offense is also relevant where, as here, his extensive state disciplinary history was considered at his original sentencing. (*See* Sept. 19, 2017 Sent. Tr. at 28:5-15.)

[5] The court also gives weight to Mr. Ely's minimal record during the pandemic which "surely increased the pressure-cooker environment of prison." (Reply (Dkt. 70) at 2.) These are precisely the facts to consider under the § 3553 analysis and further discount the Government's argument that nothing has changed to warrant a sentence reduction.

nonviolent "infractions will not preclude a defendant from a reduction." *See, e.g., United States v. Harris*, 162 F. Supp. 3d 65, 66 (D. Conn. 2016).

Mr. Ely's history and characteristics are also worth noting for the record. Mr. Ely has lived an extremely difficult life. Mr. Ely, who is now 59 years old, struggles to read and write, and has lived much of his life in the carceral system. (PSR ¶¶ 52-57, 85.) Of his three siblings, Mr. Ely is only close with his sister who works as a health aide. (*Id.* ¶ 69.) His older brother is incarcerated, and his younger brother is homeless suffering from mental health issues. (*Id.*)[6] Mr. Ely also has his own battles with mental health, being diagnosed with attention deficit hyperactivity disorder as a child, and only later in life (and while in state custody), being diagnosed with Schizophrenia. (*Id.* ¶¶ 77-78.) Despite (or because of) this diagnosis, Mr. Ely spent considerable stretches of time in solitary confinement. (*Id.* ¶ 55.) Mr. Ely has attempted to commit suicide twice, both times while incarcerated. (*Id.* ¶ 77.) He also battles with substance abuse, an addiction that has only fueled his criminality. (*Id.* ¶ 79.)[7] During his statement in open court, Mr. Ely took responsibility for his crimes, expressing remorse and reiterating that it was never his intent to hurt anyone, but simply that "[i]t was just me trying to take money to satisfy my addiction." (Sept. 8, 2017 Sent. Tr. at 39:24-30:3.).

As his counsel described it:

> Mr. Ely is somebody who throughout his life has endured one of the most unimaginably difficult lives that anyone could imagine. He's never had a fair shot, society has completely failed him. And

---

[6] The PSR notes that Mr. Ely has "many paternal half-siblings" but Mr. Ely informed the Probation Department that he "did not have contact with any of his paternal half-siblings when he was growing up." (*Id.* ¶ 71.)

[7] Mr. Ely also suffers from Type 2 diabetes and hypertension. (*See* M&O Denying First Mot. for Reduction at 3.)

> because of the environment that he grew up in, he is now before the Court as one of the lower functioning defendants . . . he is just barely over the bar [of competence], and that led to terrible decision-making. It [led] to drug addiction and it led him to make some very difficult decisions.

(Sept. 19, 2017 Sent. Tr. at 20:9-17.)

At the time of sentencing, Judge Mauskopf reviewed in critical detail Mr. Ely's intellectual disabilities and capacity to make informed decisions. Indeed, she continued his sentencing to hear more from the parties and to review Mr. Ely's medical reports to ensure she came to an appropriate sentence. (Sept. 8, 2017 Sent. Tr. at 3:3-9.) While the court found that Mr. Ely was able to appreciate his conduct and understand right from wrong, there was still a concern that without structure and guidance, Mr. Ely may have difficulties navigating the pressures of his environment. (*See* Sept. 19, 2017 Sent. Tr. at 29:5-31:23.)

This brings us to factors such as deterrence and risk of recidivism. Mr. Ely is nearing 60, an age where the risk of recidivism is greatly reduced. *See* U.S. Sentencing Commission, Recidivism of Federal Offenders Released in 2010, 24 (Sept. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf (noting that recidivism rates steadily decline with increasing age and finding that the lowest rearrest rates were for offenders age 60 and older); *United States v. Piggott*, No. 94-CR-417, 2022 WL 118632 (SHS), at *3 (S.D.N.Y. Jan. 12, 2020) (noting advanced age as a relevant factor for predicting recidivism); *see also United States v. Tellier*, No. 92-CR-869 (LGS), 2023 WL 5498909, at *6 (S.D.N.Y. Aug. 25, 2023) (same).

At the time of Mr. Ely's first motion for a reduced sentence, the court took into consideration that Mr. Ely had served less than

half of his sentence. As a result, Judge Mauskopf could not determine that Mr. Ely was no longer a danger to the community, noting that "[w]hile Ely has certainly made progress towards rehabilitation, including successful completion of a drug program and a good disciplinary record while incarcerated, rehabilitation alone cannot serve as an extraordinary and compelling reason to grant compassionate release." (M&O Denying First Mot. for Reduction at 6-7.) Over three years later, Mr. Ely has nearly served his full sentence and is projected to be released in March 2025.[8]

"Courts have viewed evidence of a defendant's rehabilitation as support for such deterrence and protection of the public from future harm." *United States v. Whitted*, No. 04-CR-0176, 2021 WL 293316 (RAM), at *7 (D.V.I. Jan. 28, 2021). Mr. Ely has previously discussed his completion of the Bureau of Prison's ("BOP") drug education program and participation in a residential mental health life training program which this court considers here. (*See* Emergency Mot. (Dkt. 40) at ECF 12.) According to a review of his institutional record by the Probation Department, Mr. Ely has also participated in numerous educational and vocational programs, including General Educational Development Basic 3, Adult Basic Education, and more. (*See* Supplement to PSR at 4.) "His rehabilitation is further supported by his transfer to the [Residential Reentry Management Field Office in New York]." *United States v. Donato*, No. 03-CR-929, 2024 WL 665939, at *7 (E.D.N.Y. Feb. 16, 2024). According to the federal BOP website, Mr. Ely is no longer incarcerated at FCI Danbury; the "Inmate Locator" reveals that he is currently in the custody of New York's Residential Reentry Management ("RRM") field office.[9] Upon

---

[8] This projected release date accounts for good time credits.

[9] The court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information). Here, the court takes judicial notice

consultation with the Probation Department, it appears Mr. Ely was transferred to the Brooklyn House, a residential reentry center ("RRC") in Brooklyn, New York on March 5, 2024.

Place of imprisonment, including RRC assignments, are governed by the Second Chance Act, 18 U.S.C. § 3624(c). Pursuant to the statute, when determining the place of imprisonment, the BOP must consider factors similar to those in § 3553(a), including but not limited to, the nature and circumstances of the offense; history and characteristics of the incarcerated person; and any pertinent policy statement issued by the Sentencing Commission. 18 U.S.C. § 3624(c)(6); *Id.* § 3621(b); *see also Dadaille v. Terrell*, No. 09-CV-5036 (SLT), 2010 WL 1930267, at *4 (E.D.N.Y. May 10, 2010). Therefore, in placing Mr. Ely in an RRC, the BOP—the entity that has directly interacted with Mr. Ely on a daily basis for the past seven years—determined that Mr. Ely satisfied the factors that warrant transfer under §§ 3624(c)(6) and 3621(b). The BOP's determination to place Mr. Ely in an RRC with fewer restrictions and more programming geared towards assisting Mr. Ely with reentry back into the community further supports a reduction in sentence. [10] While still of relevance, concerns regarding whether he is a danger to society are substantially reduced.

---

of the BOP website, at which a search for Mr. Ely's name on the Inmate Locater returns a message stating that Mr. Ely is located at "New York RRM" and scheduled for release on March 1, 2025. *See* Find an Inmate, *Federal Bureau of Prisons*, https://www.bop.gov/inmateloc/ (last visited April 5, 2024). New York RRM is a Residential Reentry Management field office that supervises inmates in, *inter alia*, residential reentry centers and home confinement. *See* RRM New York, *Federal Bureau of Prisons*, https://www.bop.gov/locations/ccm/cnk/ (last visited April 5, 2024).

[10] *See* Residential Reentry Centers, *Federal Bureau of Prisons*, https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp (last accessed April 5, 2024).

To be sure, the court cannot say with certainty that Mr. Ely will never commit another crime, but it can say that Mr. Ely has matured in light of his successful completion of drug and educational programs, his minimal disciplinary record over the past seven years, and his current placement in a halfway house.[11] (Mot. at 3.); *see also supra* note 9.

"At the very crux of compassionate release is the recognition that no man is beyond redemption." *United States v. Snype*, No. 02-CR-939 (DC), 2023 WL 4622870, at *12 (S.D.N.Y. July 19, 2023). Mr. Ely has made strides toward redemption and rehabilitation. (*See, e.g.,* Emergency Mot. at ECF 12 (describing himself as "accepting full responsibility for his actions and their consequences both direct and indirect.").) The court recognizes the church and community support that Mr. Ely has had over the years and hopes that with additional structured support and guidance through reentry programs and treatment, Mr. Ely can one day live the life of a law-abiding citizen. (*See generally* Letters of Support (Dkts. 25-28).)

This is not a case where Mr. Ely is asking for time served, nor is he requesting a reduction in his supervised release. Rather, the court is contemplating whether a five-month reduction in his sentence is warranted. The court finds that it is.

Considering Mr. Ely has served a substantial portion of his sentence, his maturity and age, minimal disciplinary record, and rehabilitation, the court concludes that a sentence of 125 months to be sufficient but not greater than necessary to meet the goals of sentencing in this case. This new sentence is similarly at the bottom-end of the applicable Guidelines range as was his initial sentence and still reflects the nature and circumstances of his offense as well as the offense's seriousness. The court further finds

---

[11] RRCs are colloquially referred to as halfway houses.

that his time in prison has included navigating difficult conditions during the pandemic that the court could not have contemplated at the time of his sentencing. *United States v. Oquendo*, No. 13-CR-357 (KPF), 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023) ("[C]ourts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences harsher and more punitive than would otherwise have been the case.").[12] Moreover, once released, Mr. Ely will be on supervised release for five years with special conditions including time in an RRC to aid in securing housing[13] and participation in a mental health treatment program. (*See* Judgment.) As supervised release is part of his sentence, the court finds a 5-month reduction in his incarceratory sentence appropriate in light of the considerations already discussed.

---

[12] Indeed, the court in *Oquendo*, as well as this court, have held that "pandemic-induced conditions of confinement can constitute 'extraordinary and compelling' circumstances warranting compassionate release, particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic." *Id.*; *United States v. Johnson*, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023); *Donato*, 2024 WL 665939, at *6. While the instant motion comes pursuant to 18 U.S.C. § 3582(c)(2) such that Mr. Ely need not prove extraordinary and compelling reasons for a reduction in sentence, this court nevertheless considers the pandemic-induced conditions as relevant under § 3553(a)(2)(A) ("just punishment for the offense"). While a just punishment at the time of sentencing, Mr. Ely's sentence was exacerbated by harsher conditions than could have been anticipated. Such a circumstance is not insignificant here.

[13] The court understands that Mr. Ely's current assignment at the Brooklyn House RRC is under the purview of the BOP. Once Mr. Ely has completed his term of imprisonment, he will be released from the BOP's custody and may be transferred to a different RRC to begin his term of supervised release under the supervision of the Probation Department until he can secure housing. (*See* Judgment.)

In sum, after consulting the § 3553(a) factors, the court reduces Mr. Ely's sentence from 130 months imprisonment to 125 months. Specifically, on Counts I and II, Mr. Ely's sentence is 41 months. The mandated 84-month term on Count IV remains unchanged. All other aspects of Mr. Ely's judgment, as of May 25, 2022 remain in full effect.[14]

## V. CONCLUSION

For the reasons discussed, Mr. Ely's motion for a reduction in sentence is GRANTED. His sentence is reduced from 130 months to 125 months' imprisonment, followed by a period of supervised release for five years, during which all previously imposed conditions will apply.

SO ORDERED.

Dated:   Brooklyn, New York
         April 22, 2024

                                            s/Nicholas G. Garaufis
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge

---

[14] In July 2021, the case was reassigned from Judge Mauskopf to Judge Raymond J. Dearie. Judge Dearie removed a special condition requiring drug treatment from Mr. Ely's sentence. (*See* Special Condition Order dated 5/25/22 (Dkt. 62).) Accordingly, the sentence the court imposes today includes that modification.